1   E. Lynn Perry (CA Bar 115165)
    PERRY IP GROUP A LAW CORPORATION
2   900 Larkspur Landing Circle Ste 226
    Larkspur, CA 94939
3   415-524-8683 (tel.)
    415-524-8685 (fax)
4   lperry@perryip.com
    Attorneys for Plaintiff
5   TRANSFRESH CORPORATION

6                          UNITED STATES DISTRICT COURT

7                     FOR THE NORTHERN DISTRICT OF CALIFORNIA

8   TRANSFRESH CORPORATION, a Delaware          Case No.    C 11-06348 JCS
    corporation,
9
                      Plaintiff,
10
             v.                                 **MEMORANDUM IN SUPPORT OF**
11                                              **PLAINTIFF TRANSFRESH**
    GANZERLA & ASSOCIATES, INC., a             **CORPORATION'S OPPOSITION TO**
12  California  corporation, also doing business as  **DEFENDANTS' MOTION TO DISMISS**
    PEAKFRESH USA, and GREGORY A.              **COMPLAINT PURSUANT TO FRCP**
13  GANZERLA, an individual,                    **RULE 12(b)(6)**

14                    Defendants.               Date:  February 10, 2012
                                                Time:  9:30 a.m.
15                                              Court: G

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
I. ISSUES TO BE DECIDED ...................................................... 1

3
II. BACKGROUND ................................................................. 1

4
III. ARGUMENT .................................................................. 2

5
    A. LEGAL STANDARD FOR MOTION TO DISMISS ...................................... 2

6
    B. COMPLAINT'S ALLEGATIONS ARE AGAINST BOTH DEFENDANTS .............2

7
    C. COMPLAINT PROPERLY REQUESTS DECLARATORY RELIEF ........................3

8
    D. COMPLAINT MEETS APPLICABLE PLEADING STANDARD.............................6

9
    E. ALL CLAIMS ARE PROPERLY PLED ....................................... 10

10
        1. LANHAM ACT SECTION 43(a) (15 U.S.C. §1125(a) CLAIM MEETS
PLEADING STANDARD ................................................... 10
11

12
        2. CALIFORNIA UNFAIR COMPETITION CLAIM MEETS PLEADING
STANDARD ........................................................... 12

13
        3. CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC
ADVANTAGE MEETS PLEADING STANDARD ........................... 14
14

15
        4. CLAIM FOR TRADE LIBEL AND DEFAMATION MEETS PLEADING
STANDARD ........................................................... 15

16
        5. CLAIM FOR GREENWASHING MEETS PLEADING STANDARD .......... 16

17
IV. CONCLUSION .............................................................. 17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).................................................................................................... 2

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396-7 (9th Cir. 1982) ................... 5

*Collegenet, Inc. v. XAP Corporation*, 2004 WL 2303506, *2 (D.Or.), (unpublished opinion), *adopted as modified*, 2005 WL 708406 (D.Or.2005) ........................................ 8

*Day v. AT & T Corp.*, 63 Cal.App.4th 325, 331-2, 74 Cal.Rptr.2d 55 (1998) ....................................... 13

*Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir.1998).................................... 2

*Express Scripts, Inc. v. Intel Corp.*, 2010 U.S. Dist. LEXIS 18933 (E.D. Mo. Mar. 3, 2010)............................................................................................................................... 6

*Geltech Solutions, Inc. v. Marteal, Ltd.*, 2010 U.S. Dist. LEXIS 44118 (S.D. Fla. May 5, 2010).......................................................................................................................... 5

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997) ................................ 2

*Hewlett-Packard Co. v. Acceleron* LLC, 587 F.3d 1358, 1363 (Fed. Cir. 2009)....................... 6

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002) ....................... 11

*Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1143-4, 131 Cal.Rptr.2d 29 (2003)................................................................................................... 13

*MedImmune,Inc. v. Genentech, Inc.* ................................................................................... 5

*Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999) ........................................................ 2

*Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) ........................ 11

*Pestube Systems, Inc. v. Hometeam Pest Defense, LLC*, 2006 WL 1441014, *2 (D.Ariz.) ................................................................................................................... 9

*Sinclair v. StudioCanal, S.A.*, 2010 U.S. Dist. LEXIS 51484 (E.D. La. Apr. 29, 2010)........................ 6

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ................................ 12

*Surefoot LC v. Sure Foot Corporation*, 531 F.3d 1236 (10th Cir. 2008)................................ 5

*U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986) ................................ 12

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................... 9

*Wyler Summit Partnership v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998).................................................................................................................... 2

**Statutes**

15 U.S.C. § 1125(a) .......................................................................................................... 1, 9, 18

Cal. B&P Code §§17200 ...................................................................................... 1

Cal. Bus. & Prof. Code § 17580 ....................................................................... 19

Cal. Bus. & Prof. Code § 17580.5 .................................................................... 19

Cal. Bus. & Prof. Code §§17200 *et. seq.* ........................................................ 14

Cal. Bus. & Prof. Code §17580 ........................................................................ 19

Cal. Bus. & Prof. Code §17580, 17580.5 ........................................................... 1

Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 ................................... 2, 5, 6, 7

**Other Authorities**

Cal. Jur. 3d Interference with Economic Advantage § 9 ................................... 15

McCarthy on Trademarks and Unfair Competition § 27:10 (4th ed.) ................. 16

McCarthy on Trademarks and Unfair Competition § 27:51 (4th ed.); 15 U.S.C. §1125(a) ........................................................................................................... 8

**Rules**

Federal Rules of Civic Procedure Rule 12(b)(6) ...................................... 1, 14

Federal Rules of Civil Procedure Rule 9(b) ....................................... 1, 2, 8, 9

**MEMORANDUM IN SUPPORT OF PLAINTIFF TRANSFRESH CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.  ISSUES TO BE DECIDED

1.  Should Defendants' Motion to Dismiss Defendant Gregory A. Ganzerla be denied because all claims have been alleged against that Defendant?

2.  Should Defendants' Motion to Dismiss the Declaratory Judgment Count of the Complaint be denied because Plaintiff has pled a concrete and specific controversy which exists?

3.  Should Defendants' Motion to Dismiss the remaining counts of Plaintiff's Complaint be denied because Plaintiff has met proper pleading requirements?

## II.  BACKGROUND

On December 15, 2011, Plaintiff filed its Complaint in this action, with claims for false advertising, false designation and description and unfair competition under federal law (Lanham Act Sec. 43(a), 15 U.S.C. §1125(a); unfair competition and false advertising under California law (Cal. B&P Code §§17200 *et seq.*); "greenwashing" under California law including failure to maintain and provide upon request information and documentation supporting the validity of representations made (Cal. Bus. & Prof. Code §17580, 17580.5); unfair competition under California common law; trade libel under California law; intentional interference with prospective economic advantage under California law; and a declaratory judgment that Plaintiff has not engaged in false advertising. Defendants have responded with a FRCP Rule 12(b)(6) Motion to Dismiss all counts on the alleged bases that all causes of action except the one seeking Declaratory Relief, must meet the Federal Rules of Civil Procedure Rule 9(b) standard of pleading and that none of the claims have met that standard, and that no allegations have been made against Defendant Greg Ganzerla.  Regarding Declaratory Relief, Defendants claim that their demand letter and other communications have not raised a justiciable controversy.

Plaintiff's Complaint asserted all claims against both Defendants.  Plaintiff's allegations are very specific, including those that are not even arguably subject to a FRCP Rule 9(b) standard of pleading.  Defendants' aggressive claims of false advertising against Plaintiff meet the threshold for establishing subject matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 ("DJA").  This motion is therefore without merit and should be denied.

## III.   ARGUMENT

### A.  LEGAL STANDARD FOR MOTION TO DISMISS

"The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Development Corp.,* 108 F.3d 246, 249 (9th Cir.1997).  Courts will typically not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief.  *Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999).  In determining whether a complaint states a claim, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Wyler Summit Partnership v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998).  Contrary to what Defendants appear to assert, an inquiry into the adequacy of the evidence is improper when deciding whether to dismiss for failure to state a claim.  *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998).  As Plaintiff will demonstrate, the subject Complaint's factual allegations are enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true, stating claims to relief that are plausible on their face.  *See, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).

### B.  COMPLAINT'S ALLEGATIONS ARE AGAINST BOTH DEFENDANTS

Defendants' Motion erroneously states, "Aside from a single allegation…Plaintiff has failed to plead any factual allegations of wrongdoing against [Greg] GANZERLA."  On the contrary, in paragraph 12 of the Complaint, Plaintiff states, "Collectively, Defendant GREGORY A. GANZERLA

and Defendant GANZERLA & ASSOCIATES, INC. will be referred to as 'Defendants.'"  The

remaining allegations of the Complaint reference "Defendants."  For example, "Defendants operate a

website…." And "Defendants solicited production of the Video…."  Compl. ¶¶ 14, 15.  Greg Ganzerla

is interviewed in the video, and he is quoted liberally in press releases on the website.  See, e.g., Perry

Decl. Ex. 3.  For example, he is quoted on the website denigrating Plaintiff as follows:  "The number

one question I was asked at PMA was 'Do you gas?' and I'm proud to say absolutely not.  Using an

antiquated, sealed system that requires gassing is environmentally un-friendly and uses dangerous

carbon dioxide that ultimately is released into the atmosphere."  *Id.*  It is clear Greg Ganzerla as an

individual participated in the acts complained of in the Complaint.

Greg Ganzerla as an individual and as an alter ego of the corporate defendant is liable for the

actions complained of in the Complaint.  The determination of whether a corporation is an alter ego of

an individual is ordinarily a question of fact.  *Misik v. D'Arco*, 197 Cal.App.4th 1065, 1072 (2011).  If

the evidence shows after discovery and trial that the failure to recognize the unity of the corporate

defendant and the individual defendant would produce inequitable results, the court may apply the

alter ego doctrine.  *See, id.,* 197 Cal. App.4th at 1074.  The court may amend its judgment so it will

properly designate the real defendants at any time.  *Id.* at 1075.  Therefore, Defendants' motion should

be denied with respect to Greg Ganzerla.

### C.  COMPLAINT PROPERLY REQUESTS DECLARATORY RELIEF

For Defendants to argue that there is no controversy and that the case does not involve "concrete

legal issues" rather than "mere abstractions" or "hypothetical[s]" is disingenuous at best.  Deft. Brief,

p. 9.  Defendants' counsel's own statements in correspondence indicate that Defendants will file a

counterclaim with their answer to the Complaint.  A concrete and specific controversy does indeed

exist and Plaintiff has pled it.

Defendants complained in their November 30, 2011 demand letter that Plaintiff's website and

sales representatives intentionally posted, communicated and made false and misleading statements and advertisements to the general public or customers, made false disparaging remarks regarding Defendants' products to clients, retailers or growers, and Defendants demanded that Plaintiff "immediately cease and desist" these activities.  Compl. ¶¶ 76, 77; Declaration of E. Lynn Perry, ¶ 3, Exh. 1.  The letter specifically threatened litigation, stating, "If this matter should proceed to litigation…TransFresh will be required to compensate our client for any and all damages incurred and … disgorge any and all revenues arising from its unlawful conduct.  Govern yourself accordingly." *Id.*; Compl. ¶77.

The letter further menaced, "Unless this matter is immediately resolved to our client's satisfaction, we intend to hold TransFresh responsible and liable for its unlawful and tortious conduct… If you fail or refuse to comply with each of the demands listed above within the period specified, *we will take all necessary steps* to protect and enforce PeakFresh's rights and remedies." *Id.* (Italics added.)  Defendants' letter emphasized, "This letter has been sent as *one last effort, short of commencing litigation*, to demand that **TransFresh immediately cease and desist** your unlawful activities."  (Italics added.)  Decl. E. Lynn Perry, ¶ 3, Exh. 1.

These are hardly the words of someone who is only "attempt[ing] to reach an informal resolution of the issues" as alleged in Defendants' brief at 9.  These are the statements of a party that is poised to file a lawsuit if the opposing party does not immediately obey the demands made.

When Plaintiff's counsel requested a week's extension to respond to the demand letter, Defendant's attorney responded by email, "*We will hold off filing the suit five days* – please help us save face with the client and get us a response before that if possible. *He is extremely upset and wants to move forward*. From our review and analysis we cannot disagree."  Decl. E. Lynn Perry, ¶ 4, Exh. 2.  (Italics added.)  Exhibit 2 of the Perry Declaration is offered simply to impeach the statements in Defendants' brief on p. 9 suggesting there is no controversy between the parties.  This is exactly the

kind of actual controversy that falls within this court's jurisdiction within the meaning of the DJA.

This Court would have subject matter jurisdiction over the Declaratory Judgment count of this case under the prior "real and reasonable apprehension of litigation" test, based solely on Defendants' November 30 demand letter.  See *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396-7 (9th Cir. 1982).  Under the current *MedImmune,Inc. v. Genentech, Inc.* "all the circumstances" test, the Court certainly has subject matter jurisdiction.  549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (jurisdiction proper where facts alleged under all circumstances show substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment).

*MedImmune* lowered the threshold for establishing subject matter jurisdiction under the DJA. Now, a single letter—even one that does not mention litigation and invites an amicable resolution— can make the sender subject to a viable DJA action.  This jurisdictional standard is also applicable in Lanham Act cases.  *See, e.g.*, *Surefoot LC v. Sure Foot Corporation*, 531 F.3d 1236 (10th Cir. 2008). Several district courts applying *MedImmune* have found a single letter to be sufficient, even where the letter does not explicitly threaten litigation.  See, e.g., *Geltech Solutions, Inc. v. Marteal, Ltd*., 2010 U.S. Dist. LEXIS 44118 (S.D. Fla. May 5, 2010).  "The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement'."  *Sinclair v. StudioCanal, S.A.*, 2010 U.S. Dist. LEXIS 51484 (E.D. La. Apr. 29, 2010) *12 n.5 (quoting *Hewlett-Packard Co. v. Acceleron* LLC, 587 F.3d 1358, 1362 (Fed. Cir. 2009)).  *See, also*, *Express Scripts, Inc. v. Intel Corp.*, 2010 U.S. Dist. LEXIS 18933 (E.D. Mo. Mar. 3, 2010) (single letter directed to an intent-to-use applicant created an actual controversy.)

According to the Complaint, Defendants' accusations precipitated uncertainty and controversy. Compl. ¶80.  Defendants' subsequent email belies Defendants' testimony in their brief that the "letter was transmitted in an attempt to reach an informal resolution of the issues."  Deft. Br., p. 9.  The DJA

1  section of the Complaint asks this Court to resolve the legal and factual questions raised by

2  Defendants in their communications.  Compl. ¶ 80.  Plaintiff therefore is entitled to declaratory relief

3  under the DJA, and Defendants' motion should be denied.

4  **D.  COMPLAINT MEETS APPLICABLE PLEADING STANDARD**

5  Completely ignoring the specificity in the Complaint, Defendants claim that it consists merely of

6  "boilerplate conclusory allegations…bereft of specific fact pleadings…."  Deft. Br., p. 7.

7

8  The Complaint alleges that Defendants have made a video accessible on their website in which

9  Plaintiff's equipment and trademarks are recognizable to the parties' consumers who would associate

10  Defendants' negative comments with Plaintiff.  Compl. ¶¶ 14-17.  Links to the 5 minute video and the

11  website are given in the Complaint.  *Id.* ¶14.  A viewing of the video reveals that it shows Plaintiff's

12  equipment and trademarks and mentions Plaintiff's service TECTROL by name.  The video is

13  currently available to visitors to Defendants' website.  *Id.*   Via this video, Defendants are publishing

14  untrue and denigrating statements claiming Plaintiff's use of $CO_2$ in its fresh produce pallet covers is a

15  harmful practice, and making untrue "green" claims about Defendants and their products.  *Id.* ¶¶16,

16  18-23, 29-34.  Defendants also make false claims that their pallet cover system is a "Modified

17  Atmosphere Packaging ('MAP')" system.  *Id.* ¶¶22, 23.  Defendants have sent the parties' customers a

18  non-pallet cover sample product suggesting it works like the Peakfresh pallet cover system, which it

19  does not, thereby misleading those customers and diverting sales from Plaintiff.  *Id.* ¶24.

20  Plaintiff has identified the specific content and medium of the misrepresentations.  The

21  Complaint refers to and quotes:  (1) Defendants' website's present untrue and misleading "green"

22  claims; (2) disparaging claims about Plaintiff; and (3) false comparative claims relative to Plaintiff

23  that are deceptive to consumers.  See, e.g., Compl. ¶¶16-18, 20, 22, 24, 29, 31, 43-46.  The Complaint

24  quotes many of the false and misleading statements on Defendants' website, including the following:

25  (a) Defendants' method is a "green method;" (b) Defendants' products or services are

26

27

28

"environmentally friendly," "gas-free" packaging solutions, and constitute "green technology"; (c) Defendants' products or services are "more environmentally responsible alternatives/methods," and "reduce your carbon footprint." Compl. ¶ 31. The Complaint also quotes the following false statements from Defendants' website: (d) Plaintiff's products and services are an "antiquated process;" (e) Plaintiff's products and services are "compromising the environment;" (f) there are risks associated with Plaintiff's use of $CO_2$; (g) Plaintiff is "injecting high levels of carbon dioxide...sealing fresh produce in the gas during shipping...emitting carbon dioxide into the atmosphere;" and (h) Plaintiff's services involve dangerous "carbon dioxide filled gassed packaging." *Id.* ¶¶ 29, 46.

The following tagline is on every single page of Defendants' website: "At Peakfresh we're doing our part to help the environment by giving our customers ... produce preservation *free of CO2 gassing*." (Italics added.) Customers in the industry recognize that "free of C02 gassing" implies that Plaintiff's C02 method is referenced and is harmful and that Defendants are claiming their method to be better for the environment. Compl. ¶ 40. Links on the home page of Defendants' website ("What is Peakfresh" and "At Peakfresh we're doing our part") lead to pages making the false MAP claims and the false "Environmental Advantage" claims. Plaintiff demonstrates that these claims are false (Compl. ¶¶ 9, 10, 19, 23, 30, 34, among others), and alleges that these statements are designed to interfere with Plaintiff's customer relationships, which they in fact have done, causing Plaintiff damage. Compl. ¶¶ 20, 21, 26, 29, 38, 40, 41, 49, 50, 53, 55, 56.

Thus, even though Plaintiff does not concede that it must, it has indeed pled the "who, what, when, where and how" of the misrepresentations Defendants have made. The "who" is Defendants and visitors to Defendants' website (including customers), the "what," "where" and "how" are Defendants' website and the video accessible thereon, currently live on the Internet. The "when" is obviously ongoing and *now*.

While complaining that Plaintiff has been non-specific, Defendants have not even attempted to show why this Court should consider any (much less all) of Plaintiff's claims to be "grounded in fraud." *Collegenet*, the Oregon district court case cited by Defendants, points out, "No United States Circuit Court has held that as a general rule, all false advertising Lanham Act claims under 15 U.S.C. § 1125(a) are subject to Rule 9(b)." *Collegenet, Inc. v. XAP Corporation,* 2004 WL 2303506, *2 (D.Or.), (unpublished opinion), *adopted as modified*, 2005 WL 708406 (D.Or.2005). It is not clear in this Circuit whether such a higher pleading standard is required for *any* false advertising case, let alone for *all* false advertising cases. After all, "§43(a) does *not* require that the false description or representation be made willfully or with an intent to deceive." 5 McCarthy on Trademarks and Unfair Competition § 27:51 (4th ed.); 15 U.S.C. §1125(a).

Furthermore, unlike our case, in *Collegenet*, *3, the defendant linked several allegations in the plaintiff's complaint to the elements of an Oregon common law fraud claim. In the instant case, Defendants have not pointed to *any* allegations which they claim plead fraud; Defendants have attempted no such link. Regardless, Plaintiff's claims in, e.g., ¶¶18, 19, 21-23, 31, 32, 34, 43-46 of the Complaint satisfy even the higher FRCP Rule 9(b) pleading requirement. Where, as here, there are sufficient non-fraudulent allegations in support of the claim asserted, Rule 9(b) need not be considered under *Collegenet*, *5.

Moreover, unlike the instant case, the *Collegenet* plaintiff "failed to identify any of the alleged misrepresentations by their specific content and medium, where in a given Internet website the alleged misrepresentations were made, and when the misrepresentations were made." *Id*. The *Collegenet* plaintiffs "general[ly] nam[ed] an entire corporation, along with unnamed institutions throughout three states and unnamed applicants who could potentially come from anywhere in the world." *Id*. In this case, Defendants are an individual and a small corporation, the links to the 5 minute video and the website are specifically given, at least one misrepresentation is on every single page of the website,

1    and Plaintiff has made very specific other allegations.

2         Again, unlike the instant case, in the *Pestube Systems* case cited by Defendants, the plaintiff

3    did not identify one false or misleading statement. *Pestube Systems, Inc. v. Hometeam Pest Defense*,

4    *LLC*, 2006 WL 1441014, *2 (D.Ariz.) "Plaintiff has asserted only basic allegations without any

5    indication as to the content or nature of the alleged actionable statement, thus Defendant is not able to

6

7    even determine if there is a legal challenge available." *Id.*, *4.

8         The rationale for the higher pleading standard was articulated in *Vess v. Ciba–Geigy Corp.*

9    *USA*, 317 F.3d 1097 (9th Cir. 2003), also cited by Defendants: the allegations must be specific enough

10   to give the defendants notice of the particular misconduct so that they can defend against the charge.

11   *Id.* At 1106. As demonstrated above, Plaintiff here has been very specific—the Complaint gives

12   Defendants detailed notice of the complained of charges. Defendants cannot quibble that they do not

13   know the precise details of the claims alleged.

14

15        Defendants' unsupported claim (brief, p. 5) that "**the entire pleading** must satisfy the

16   particularity requirements of rule 9(b)" should be disregarded. On the contrary, *Vess* held that, only

17   when the entirety of a complaint is comprised of allegations of fraud must the complaint as a whole

18   satisfy the heightened pleading requirements of FRCP Rule 9(b). 317 F.3d at 1104. "To require that

19   non-fraud allegations be stated with particularity merely because they appear in a complaint alongside

20

21   fraud averments, however, serves no similar reputation-preserving function, and would impose a

22   burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)." *Id.*

23   Furthermore, the *Vess* court observed, "Fraud is not an essential element of a claim under [Cal. Bus. &

24   Prof. Code §§17200 and 17500]… To the extent that [the plaintiff] does not aver fraud, however, his

25   allegations need not satisfy Rule 9(b)." *Id.*

26

27        As will be shown below, the Complaint in the instant case has several claims which are not

28   even arguably subject to Rule 9(b), but instead are subject to Rule 8's "short and plain statement of the

---

claim" standard.  Unlike the plaintiff in *Vess*, Plaintiff in this case has not relied entirely on a unified course of fraudulent conduct as the basis of its claim.  Therefore, the pleading of the California unfair competition claims are not "grounded in fraud" and the claim as a whole need not satisfy the Rule 9(b) particularity requirement.  *See id.* At 1103-4.  "[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."  *Id.* At 1105.

### E.  ALL CLAIMS ARE PROPERLY PLED

#### 1.  Lanham Act Section 43(a) (15 U.S.C. §1125(a) Claim Meets Pleading Standard.

Defendants have misstated the prima facie elements for a 43(a) violation.  Deft. Br., p. 6.  That section states:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her *or another person's* goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.  (Italics added.)

"To state a claim for false advertising under the Lanham Act, the plaintiff must show:  '(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to

the defendant, or by a lessening of goodwill associated with the plaintiff's product.'" *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).  The questions of whether Plaintiff's services harm the environment and whether Defendants offer a "green" alternative are factual questions.  *See, Newcal Industries*, 513 F.3d at 1053.  This Court's "review is limited to facts alleged in the complaint.  The complaint alleges that [these] statement[s] [were] false when made, and so it survives 12(b)(6) scrutiny." *Id.*

Contrary to what Defendants claim in their brief, Plaintiff has described in its Complaint (as detailed above) the location and content of several identified false and misleading statements being made in a current video and on an active website, links to which are identified in the Complaint and both of which are currently accessible to the public (including the parties' consumers).  Via this video and website, Defendants are publishing to the public (including the parties' consumers) untrue and denigrating statements about Plaintiff, claiming Plaintiff's use of $CO^2$ in its fresh produce pallet covers is a harmful practice, and falsely claiming that Defendants and their products offer an environmentally superior or "green" alternative, thereby misleading customers and diverting sales from Plaintiff.

The statements are false on their face:  C02 is not harmful when used the way Plaintiff uses it; indeed, it is recommended for such use.  Compl. ¶¶9, 10, 30.  These misleading and false statements therefore deceive or have the capacity to deceive and to influence the purchasing decision of the parties' consumers, which causes injury to Plaintiff.  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).  "It is not easy to establish actual consumer deception through direct evidence.  The expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies

the existence of a presumption that consumers are, in fact, being deceived.  He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he succeeded."  *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1041 (9th Cir. 1986).  Defendants' misleading and literally false statements invoke a presumption that consumers are being deceived.  Defendants "should not complain when required to bear the burden of rebutting a presumption that [they] succeeded."

Plaintiff has demonstrated in the Complaint that Defendants' claims are false and why they are false, and that they are designed to interfere with Plaintiff's customer relationships, which they in fact have done, causing Plaintiff damage.  Compl. ¶¶9, 10, 17-24, 29-32, 40-46, 52, 53, 55, 56.  Plaintiff has specifically pled that it has suffered economic harm, and that it is difficult or impossible to ascertain the amount of compensation that could afford Plaintiff adequate relief (*id.*); that Defendants' conduct is continuing and constitutes an ongoing threat to Plaintiff and the public; that without an injunction, Plaintiff will suffer irreparable injury, and Plaintiff has no means by which to control the continuing injury to its reputation and loss of business (*id.*); and that Plaintiffs believe that they have been damaged in an amount believed to be in excess of $1,000,000.  *Id.* ¶56.  It cannot be disputed that Defendants' advertising on the Internet affects interstate commerce.

Plaintiff has thus more than fulfilled the elements of the Section 43(a) claim.  Defendants' motion should therefore be denied.

**2.   California Unfair Competition Claim Meets Pleading Standard.**

For the same reasons, Plaintiff's allegations of Defendants' false and misleading statements pled with particularity unfair competition claims under Cal. Bus. & Prof. Code §§17200 *et. seq.* and California common law.

"Business and Professions Code section 17200 *et seq.* ['UCL'] prohibits unfair competition, including unlawful, unfair, and fraudulent business acts.  The UCL covers a wide range of conduct.  It

embraces anything that can properly be called a business practice and that at the same time is forbidden by law. [Citations omitted.] … Standing to sue under the UCL is expansive as well.  Unfair competition actions can be brought by a public prosecutor or 'by any person acting for the interests of itself, its members or the general public.' (§ 17204.)  Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citations omitted.]  In addition, under section 17200, 'a practice may be deemed unfair even if not specifically proscribed by some other law.' [Citations omitted.]"  *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1143-4, 131 Cal.Rptr.2d 29 (2003).

  "Sections 17200 and 17500 are consumer protection statutes designed, in part, to protect the public by prohibiting false, unfair, misleading or deceptive advertising [citation omitted].  'To state a cause of action under these statutes for injunctive relief, it is necessary only to show that 'members of the public are likely to be deceived.' [Citations] (*Ibid.*)" *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 331-2, 74 Cal.Rptr.2d 55 (1998).  "Actual deception or confusion caused by misleading statements is not required. [Citation omitted.]"  *Id.*  "No proof of direct harm from a defendant's unfair business practice need be shown…."  *Id.* "Section 17200 has been interpreted broadly to bar all ongoing wrongful business activity, including misleading advertising, in whatever context it presents itself. [Citation omitted.]"  *Id.*  Defendants' false and misleading claims, detailed above, clearly state a claim under the UCL.

  Moreover, "the concept encompassed in the phrase 'likely to be deceived' has no relationship to the concept of common law fraud, which is also sometimes referred to as deception.  A fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages.  None of these elements are required to state a claim for injunctive relief under section 17200 or 17500." *Day v. AT & T Corp.*, 63 Cal.App.4th at 331-2.  Plaintiff was therefore not required to plead fraud to make out a claim for unfair competition under Sections 17200

*et seq.* Nevertheless, for the reasons stated in the previous sections, Plaintiff pled all necessary elements with particularity.

The wrongful activity of Defendants complained of specifically in the Complaint, as detailed in the above sections, clearly meets the elements of unfair competition claims under California statutory and common law. Thus, regardless of whether some of Plaintiff's allegations are considered to be claims of fraud, Plaintiff's Complaint is sufficient to withstand Defendants' FRCP 12(b)(6) motion. Accordingly, Defendants' motion should therefore be denied.

**3. Claim For Interference With Prospective Economic Advantage Meets Pleading Standard**

It is a small industry. The parties are direct competitors. Compl. ¶ 13. Defendants were aware of Plaintiff's economic and business relationships with various customers at all relevant times. *Id.* ¶98. It follows that the parties each know the other's customers and the customers are familiar with the parties, as well. Plaintiff pled that Defendants have posted a video on their website, whose address is identified in the Complaint, in which Plaintiff's equipment and trademarks are recognizable to the parties' consumers. *Id.* ¶¶14-17. Via this video and website, Defendants are publishing untrue and denigrating statements about Plaintiff and its products and untrue "green" claims about Defendants and their products. *Id.* ¶¶18-23, 29-34. Defendants have sent the parties' customers a sample of a different product, suggesting it works like the Peakfresh pallet cover system, which it does not, thereby misleading those customers and diverting sales from Plaintiff. *Id.* ¶24. The Complaint refers to and quotes Defendants' website's present untrue and misleading "green" claims, disparaging claims about Plaintiff and false comparative claims relative to Plaintiff. *Id.* ¶¶16-18, 22, 24, 43-46, among others. Plaintiff demonstrates that these claims are false. *Id.* ¶¶9, 10, 19, 23, 30, 34, among others. Plaintiff alleges that these false statements are designed to interfere with Plaintiff's customer relationships, which they in fact have done, causing Plaintiff damage. *Id.* ¶¶ 20, 21, 26, 29, 38, 40, 41, 49, 50, 53, 55, 56. Plaintiff also pled that Defendants appropriated Plaintiff's economic advantage by

misleading Plaintiff's customers with false representations concerning both parties' goods and services, in an effort to interfere with the business relationships existing between these customers and Plaintiff. *Id.* ¶98.

Not only has Plaintiff alleged specific facts, Plaintiff's allegations plead the elements of the tort of intentional interference with economic advantage:  an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; the defendant's knowledge of the existence of the relationship; the defendant's intentional acts designed to disrupt the relationship; actual disruption of the relationship; and economic harm to the plaintiff proximately caused by the defendant's acts.  40 Cal. Jur. 3d Interference with Economic Advantage § 9.  Contrary to what Defendants claim in their motion, there is no heightened pleading requirement for this cause of action.  Defendants have cited no law to the contrary.  Defendants' motion to dismiss this claim should be denied.

### 4.  Claim for Trade Libel and Defamation Meets Pleading Standard

Defendants claim that the only false representations about Plaintiff and its products that Plaintiff alleged are those made in the video.  Deft. Br. P. 11.  This is incorrect.  But even if Defendants' claim were correct, Plaintiff properly pled trade libel and defamation.

The Complaint alleged that, throughout the video and on the website, Defendants use the pejorative "gassing" when referring to the TECTROL process.  Complaint ¶¶20, 43.  Plaintiff also alleged that Defendants make misleading statements on their website about Plaintiff and that use of $CO_2$ by Plaintiff is harmful to the environment.  *Id.* ¶¶30, 38.  Plaintiff alleged that Defendants' website, representatives and advertisements make false and misleading claims that Defendants' products or services are "gas-free" and "more environmentally responsible" and "safer for the environment" than Plaintiff's alternative products or services.  *Id.* ¶31.  Plaintiff's Complaint alleged that Defendants falsely claimed that Plaintiff's goods and services are not certified as organic.  *Id.*

¶45.  The Complaint alleges that Defendants misrepresent that Plaintiff's products or services are harmful to the environment, that Defendants' products or services offer a "green" advantage over, or are better for the environment than Plaintiff's products or services; that Plaintiff's products and services are an "antiquated process," are "compromising the environment," and that there are risks associated with Plaintiff's use of CO2; and that Plaintiff is dangerously "injecting high levels of carbon dioxide…sealing fresh produce in the gas during shipping…emitting carbon dioxide into the atmosphere;" and that Plaintiff's services involve "carbon dioxide filled gassed packaging."  *Id.* ¶46.

As further described above in this response, these misstatements are currently being made to the public, including customers.  They expose Plaintiff to hatred, contempt, ridicule, and obloquy, cause Plaintiff to be shunned or avoided, and tend to injure Plaintiff in its occupation.  Complaint ¶38.  The Complaint alleges that this tends to lessen Plaintiff's profits, or otherwise cause damage to Plaintiff (*id.* ¶41), as well as loss of reputation, shame, and mortification.  *Id.* ¶42.  Such activities constitute libel (*id.* ¶39) and slander.  *Id.* ¶41.  Customers of the parties are able to recognize the defamatory meaning of Defendants' misrepresentations by virtue of their knowledge of specific facts and circumstances extrinsic to the misrepresentations.  *Id.* ¶40.  Plaintiff has suffered loss of reputation, shame, and mortification in respect to its business.  *Id.* ¶42.

Plaintiff has thus properly pled trade libel under California law.  Plaintiff has also pled trade libel under Lanham Act §43(a), 15 U.S.C. §1125(a).  *See*, 5 McCarthy on Trademarks and Unfair Competition § 27:10 (4th ed.)

**5.  Claim for Greenwashing Meets Pleading Standard**

According to Cal. Bus. & Prof. Code § 17580, "(a) Any person who represents in advertising … of a consumer good that [it] is not harmful to, or is beneficial to, the natural environment, through the use of such terms as "environmental choice," "ecologically friendly," "earth friendly," "environmentally friendly," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically

safe," "environmentally lite," "green product," or any other like term, shall maintain in written form in

its records … information and documentation supporting the validity of the representation…." (b)

Information and documentation maintained pursuant to this section shall be furnished to any member

of the public upon request." Cal. Bus. & Prof. Code § 17580.5 provides: (a) It is unlawful for any

person to make any untruthful, deceptive, or misleading environmental marketing claim, whether

explicit or implied." Plaintiff has alleged that Defendants made such "greenwashing" representations,

and that Plaintiff requested such documentation from Defendants, including by letter dated February

16, 2011, but Defendants have not produced such information to Plaintiff, in violation of Cal. Bus. &

Prof. Code §17580 (b). Complaint ¶84.

Contrary to what Defendants claim in their motion, there is no heightened pleading

requirement for this cause of action. Defendants have cited no law to the contrary. Accordingly,

Defendants' motion to dismiss this claim should be denied.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is not well taken and should be

denied in its entirety.

Respectfully submitted,

Dated: January 19, 2012                        By_____

E. Lynn Perry
Attorneys for Plaintiff
TRANSFRESH CORPORATION